UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MOHIT RANDHAWA aka HARPAL
SINGH,                                    NO. CIV. 09-2304 WBS DAD

         Plaintiff,

    v.                                    MEMORANDUM AND ORDER RE:
                                          MOTIONS TO DISMISS

SKYLUX INC., INTERACTIVE
INTELLIGENCE, INC., MUJEEB
PUZHAKKARAILLATH, and DOES 1
through 20, inclusive,

         Defendants.
_____/

----oo0oo----

         Plaintiff Mohit Randhawa aka Harpal Singh filed this

action in state court against defendants Skylux Inc. ("Skylux"),

Interactive Intelligence, Inc. ("Interactive"), and Mujeeb

Puzhakkaraillath alleging various state claims relating to a

contract for calling center software.  All defendants removed the

action to federal court.  Skylux and Puzhakkaraillath now move to

dismiss plaintiff's First Amended Complaint ("FAC") pursuant to

Federal Rules of Civil Procedure 12(b)(2) for lack of personal

1

jurisdiction, 12(b)(3) for improper venue, and 12(b)(6)[1] for failure to state a claim upon which relief can be granted.

I.   Factual and Procedural Background

Skylux is a New York corporation of which Puzhakkaraillath, a New York resident, is President and CEO. (First Amended Complaint ("FAC") ¶¶ 4, 15; Decl. Puzhakkaraillath ¶ 7.)  In April 2005, Skylux and Puzhakkaraillath allegedly contacted plaintiff, a resident of California, advertising software for an integrated calling center.  (FAC. ¶¶ 1, 8.)  The software was manufactured by Interactive, an Indiana corporation, and Skylux acted as authorized reseller and service provider. (Id. ¶¶ 3, 8, 17.)  On May 27, 2005, representatives for plaintiff entered into a written Memorandum of Understanding ("MOU") with Skylux Telelink Pvt. Ltd. ("STPL"), an Indian company also owned by Puzhakkaraillath, to set up the Interactive software for an inbound and outbound Indian calling center for plaintiff's future company.  (FAC Ex. A; FAC ¶ 9; Decl. Puzhakkaraillath ¶ 4.)  Skylux and Puzhakkaraillath allegedly represented to plaintiff that Skylux would be responsible for implementing the Interactive software and calling system.  (Id. ¶ 27.)  Plaintiff also tendered approximately $207,000.00 to Skylux to purchase the software and licenses to use the software, and hired employees for the calling center.  (FAC ¶¶ 10, 11.) Plaintiff alleges that Skylux has not overseen the finalization

---

[1] While defendants Skylux and Puzhakkaraillath originally moved to dismiss the entirety of plaintiff's FAC pursuant to 12(b)(6), they have since withdrawn their 12(b)(6) motion with respect to plaintiff's sixth and seventh causes of action. (Skylux Reply 8.)

1  of the call center project as required by the MOU. (Id. ¶ 20.)

2  Beginning around September 2005 and ending in May 2009,

3  plaintiff had technical difficulties using the Interactive

4  software. (Id. ¶ 13.) Plaintiff alleges he purchased software

5  for inbound and outbound calls, but the licenses he received were

6  only for outbound calls. (Id.) Plaintiff alleges that Skylux

7  refused to provide him with the correct inbound/outbound licenses

8  or respond to his complaints for four years, and represented that

9  they had no record that plaintiff had purchased Interactive

10  licenses though them. (Id. ¶¶ 17, 24, 27.) Skylux allegedly

11  refused to acknowledge that plaintiff has purchased the licenses.

12  (Id. ¶ 20.)

13  One of plaintiff's employees, Amit Aurora, allegedly

14  worked as an agent for Skylux and intentionally damaged

15  plaintiff's Interactive software and property so that plaintiff

16  would have to pay Skylux repair and consultation fees. (Id. ¶¶

17  12, 48.) Skylux allegedly hired Aurora after his employment with

18  plaintiff ended. (Id.)

19  II. Discussion

20  On a motion to dismiss, the court must accept the

21  allegations in the complaint as true and draw all reasonable

22  inferences in favor of the plaintiff. Scheuer v. Rhodes, 416

23  U.S. 232, 236 (1974), overruled on other grounds by Davis v.

24  Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322

25  (1972). To survive a motion to dismiss, a plaintiff needs to

26  plead "only enough facts to state a claim to relief that is

27  plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct.

28  1955, 1974 (2007). This "plausibility standard," however, "asks

3

for more than a sheer possibility that a defendant has acted
unlawfully," and where a complaint pleads facts that are "merely
consistent with" a defendant's liability, it "stops short of the
line between possibility and plausibility." <u>Ashcroft v. Iqbal</u>,
129 S. Ct. 1937, 1949 (2009) (quoting <u>Twombly</u>, 550 U.S. at
556-57).

        In general, the court may not consider materials other
than the facts alleged in the complaint when ruling on a motion
to dismiss. <u>Anderson v. Angelone</u>, 86 F.3d 932, 934 (9th Cir.
1996). The court may, however, consider additional materials if
the plaintiff has alleged their existence in the complaint and if
their authenticity is not disputed. <u>See</u> <u>Branch v. Tunnell</u>, 14
F.3d 449, 454 (9th Cir. 1994), <u>overruled on other grounds by</u>
<u>Galbraith v. County of Santa Clara</u>, 307 F.3d 1119 (9th Cir.
2002). Here, plaintiff and defendants Skylux and
Puzhakkaraillath have provided the court with a copy of the MOU
(Removal Ex. A; FAC Ex. A) and no party has questioned its
authenticity. Accordingly, the court will consider this document
in deciding defendants' motion to dismiss.

        Upon granting a motion to dismiss, Federal Rule of
Civil Procedure 15(a) "advises the court that 'leave shall be
freely given when justice so requires,'" and the court should
grant leave under Rule 15(a) "'with extreme liberality.'"
<u>Eminence Capital, L.L.C. v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052
(9th Cir. 2003). "Absent prejudice, or a strong showing of any
[other relevant] factor[], there exists a <u>presumption</u> under Rule
15(a) in favor of granting leave to amend." <u>Id.</u> "Dismissal with
prejudice and without leave to amend is not appropriate unless it

4

1  is clear . . . that the complaint could not be saved by

2  amendment." Id.   Defendants have failed to show that they will

3  suffer prejudice if plaintiff is allowed to file a second amended

4  complaint.  Accordingly, upon dismissing any claims, the court

5  must grant plaintiff leave to amend his FAC unless the futility

6  of amendment warrants dismissing a claim with prejudice.

7       A.   Motion to Dismiss for Lack of Personal Jurisdiction

8            A plaintiff has the burden of establishing that the

9  court has personal jurisdiction over a defendant.  Doe v. Unocal

10  Corp., 248 F.3d 915, 922 (9th Cir. 2001) (citing Cubbage v.

11  Merchant, 744 F.2d 665, 667 (9th Cir. 1984)).  On a motion to

12  dismiss, a plaintiff "need make only a prima facie showing of

13  jurisdictional facts . . . .  That is, the plaintiff need only

14  demonstrate facts that if true would support jurisdiction over

15  the defendant."  Id. (quoting Ballard v. Savage, 65 F.3d 1495,

16  1498 (9th Cir. 1995)).  When not directly controverted, a

17  plaintiff's version of the facts must be taken as true and

18  conflicts between the facts contained in the parties' affidavits

19  should be resolved in favor of the plaintiff.  Id. at 922.  Once

20  a defendant has contradicted the allegations contained in the

21  complaint, however, a plaintiff may not rest on the pleadings,

22  but must present admissible evidence which, if true, would

23  support the exercise of personal jurisdiction.  Harris Rutsky &

24  Co. Ins. Svcs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129

25  (9th Cir. 2003).

26            "Personal jurisdiction over a nonresident defendant is

27  tested by a two-part analysis.  First, the exercise of

28  jurisdiction must satisfy the requirements of the applicable

state long-arm statute.  Second, the exercise of jurisdiction must comport with federal due process." Dow Chem. Co. v. Calderon, 422 F.3d 827, 830 (9th Cir. 2005) (quoting Chan v. Soc'y Expeditions, Inc., 39 F.3d 1398, 1404-05 (9th Cir. 1994)). "California [law] permits the exercise of personal jurisdiction to the full extent permitted by due process." Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000); see also Cal. Civ. Pro. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.").  Therefore, the governing standard in this case is whether the court's exercise of personal jurisdiction over defendant comports with federal due process.  See Calderon, 422 F.3d at 831.

        The exercise of personal jurisdiction over a defendant comports with federal due process only if the defendant "has certain minimum contacts with the relevant forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted).  In turn, sufficient "minimum contacts" can give rise to "general jurisdiction" or "specific jurisdiction." Unocal Corp., 248 F.3d at 923.  General jurisdiction applies if the defendant's activities in the forum "are substantial, continuous and systematic," whereas specific jurisdiction applies if a defendant's "less substantial contacts with the forum give rise

6

to the cause of action before the court." Unocal Corp., 248 F.3d
at 923.  Because plaintiff has not presented any argument in
support of general jurisdiction over defendants in this action,
the court will limit its analysis to determining whether specific
jurisdiction exists.

    The Ninth Circuit analyzes specific jurisdiction
according to a three-prong test:

> (1) The non-resident defendant must purposefully direct
> his activities or consummate some transaction with the
> forum or resident thereof; or perform some act by which
> he purposefully avails himself of the privilege of
> conducting activities in the forum, thereby invoking the
> benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates
> to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair
> play and substantial justice, i.e. it must be reasonable.

Yahoo! Inc., 433 F.3d at 1205-06 (quoting Schwarzenegger v. Fred
Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004)).  The
plaintiff bears the burden of satisfying the first two prongs of
the test.  Menken v. Emm, 503 F.3d 1050, 1057 (9th Cir. 2007).
If the plaintiff succeeds in satisfying both of the first two
prongs, "the burden then shifts to the defendant to 'present a
compelling case' that the exercise of jurisdiction would not be
reasonable."  Id. (quoting Schwarzenegger, 374 F.3d at 802).

    1.   Purposefully Avail/Direct

    The purposeful availment prong of the specific
jurisdiction test has been further subdivided into two distinct
questions: whether Skylux and Puzhakkaraillath either (1)
"purposefully availed" themselves of the privilege of conducting
activities in the forum, or (2) "purposefully directed" their

7

activities toward the forum.  See Schwarzenegger, 374 F.3d at 802 ("We often use the phrase 'purposeful availment,' in shorthand fashion, to include both purposeful availment and purposeful direction, but availment and direction are, in fact, two distinct concepts.  A purposeful availment analysis is most often used in suits sounding in contract.  A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort.") (internal citations omitted).  Because plaintiff in this case alleges tort and contract claims, an analysis of both purposeful availment and purposeful direction is appropriate.

a.  Purposeful Availment

A showing that a defendant purposefully availed itself of the privilege of doing business in a forum state typically consists of evidence of the defendant's contacts or actions in the forum.  By making such contacts or taking such actions, a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958).  In return for these "benefits and protections," a defendant must "submit to the burdens of litigation in that forum."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476,(1985); see also Cote v. Wadel, 796 F.2d 981, 984 (7th Cir. 1986) ("[P]ersonal jurisdiction over nonresidents of a state is a quid for a quo that consists of the state's extending protection or other services to the nonresident.").

Contract negotiations are classic examples of the sort of contact that can give rise to in personam jurisdiction.  See Burger King, 471 U.S. at 473.  "A nonresident defendant's act of

8

soliciting business in the forum state will generally be
considered purposeful availment if that solicitation results in
contract negotiations or the transaction of business." 
Smith+Noble v. S. Jersey Vinyl Inc., No. 97-7473, 1998 WL 650079,
at *2 (C.D. Cal. May 11, 1998) (quoting Sinatra v. Nat'l
Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir. 1988)); see also
McGee v. Int'l Life Insur. Co., 355 U.S. 220, 221-23 (1957)
(holding that a Texas insurance corporation had minimum contacts
with California when the insurance corporation mailed an
insurance contract to California and received premium payments
from their insured customer who resided in California).

However, forming a contract with a forum-state party
does not alone create jurisdiction over a nonresident defendant.
Burger King, 471 U.S. at 478 ("If the question is whether an
individual's contract with an out-of-state party alone can
automatically establish sufficient minimum contacts in the other
party's home forum, we believe the answer clearly is that it
cannot.") (emphasis removed); see also Boschetto v. Hansing, 539
F.3d 1011, 1016-17 (9th Cir. 2008) (same); Unocal Corp., 248 F.3d
at 924 (citing McGlinchy v. Shell Chem. Co., 845 F.2d 802, 816
n.9 (9th Cir. 1988)).  Rather, contracts often give rise to
personal jurisdiction because they "create continuing
relationships and obligations" within the forum state.  Travelers
Health Ass'n v. Commonwealth of Va., 339 U.S. 643 (1950); see
also Burger King, 471 U.S. at 478 ("[W]e have emphasized the need
for a highly realistic approach that recognizes that contract is
ordinarily but an intermediate step serving to tie up prior
business negotiations with future consequences which themselves

1  are the real object of the business transaction.").

2        Courts evaluating whether contracts give rise to
3  personal jurisdiction, therefore, look to the qualitative nature
4  of the forum contacts created by the contract.  Boschetto, 539
5  F.3d at 1017 n.3 (discussing McGee, 355 U.S. at 223).  This
6  evaluation "ensures that a defendant will not be haled into a
7  jurisdiction solely as a result of random, fortuitous, or
8  attenuated contacts or of the unilateral activity of another
9  party o[r] a third person."  Unocal Corp., 248 F.3d at 924
10 (quoting Burger King, 471 U.S. at 475).

11       Plaintiff in this case alleges that personal
12 jurisdiction over Skylux arises from telephone calls made by
13 Skylux to plaintiff advertising calling center software.  (FAC ¶
14 8; Opp. Mot. to Dismiss Skylux 3:9-11.)  According to plaintiff
15 and unchallenged by defendants, Skylux knew plaintiff was in
16 California and affirmatively sought out his business by making
17 contact with him.  Skylux entered into contract negotiations with
18 plaintiff, and plaintiff allegedly paid Skylux approximately
19 $207,000.00 to purchase the software and licenses to use the
20 Interactive software.  (FAC ¶¶ 10, 11.)  As a result of these
21 discussions with Skylux and Puzhakkaraillath, plaintiff entered
22 into the MOU with STPL.  Furthermore, Skylux allegedly
23 represented that it would be responsible for implementing the
24 Interactive software and calling system.  (Id. ¶ 27.)  These are
25 precisely the sorts of contacts contemplated in Burger King that
26 give rise to a finding of purposeful availment.  See Burger King,
27 471 U.S. at 473.

28       Furthermore, as alleged, the contacts and negotiations

between plaintiff and Skylux led not only to memorializing an

agreement with STPL, but also to continued relations with Skylux

as the party responsible for implementing the software and

calling system.  <u>See</u> <u>Smith+Noble</u>, No. 97-7473, 1998 WL 650079, at

*2.  As in <u>McGee</u>, 355 U.S. at 221-23, defendant Skylux allegedly

accepted payment from plaintiff in California.  All of these

facts indicate that Skylux "purposefully avail[ed] itself of the

privilege of conducting activities" in California, and that it

should therefore be subject to jurisdiction within the state.

<u>See</u> <u>Hanson</u>, 357 U.S. at 253.

                    b.    <u>Purposeful Direction</u>

          Purposeful direction analysis is generally applied to

tort cases, in which a court "appl[ies] an 'effects' test that

focuses on the forum in which the defendant's actions were felt,

whether or not the actions themselves occurred within the forum."

<u>Yahoo! Inc.</u>, 433 F.3d at 1206 (citing <u>Schwarzenegger</u>, 374 F.3d at

803); <u>see also</u> <u>Calder v. Jones</u>, 465 U.S. 783 (1984) (finding

personal jurisdiction where defendant writers knew that an

article written and edited by them in Florida and published in

the <u>National Enquirer</u> would have an effect in California where

plaintiff lived and worked).  Purposeful direction requires that:

"the defendant allegedly [must] have (1) committed an intentional

act, (2) expressly aimed at the forum state, (3) causing harm

that the defendant knows is likely to be suffered in the forum

state."  <u>Schwarzenegger</u>, 374 F.3d at 803 (quoting <u>Dole Food Co.</u>

<u>v. Watts</u>, 303 F.3d 1101, 1111 (9th Cir. 2002)).  However, courts

applying the purposeful direction prong "evaluate all of a

defendant's contacts with the forum state, whether or not those

contacts involve wrongful activity by the defendant." <u>Yahoo! Inc.</u>, 433 F.3d at 1206.

Plaintiff here alleges that Skylux contacted him and made intentional misrepresentations when advertising Skylux's calling center services. (Opp. Mot. to Dismiss 3-4; FAC ¶ 27.) As alleged, plaintiff satisfies the first two elements of purposeful direction because the misrepresentations allegedly made before the MOU was signed were clearly targeted at plaintiff personally, as a potential business partner. That plaintiff and STPL later consummated these negotiations by signing the MOU is irrelevant; at that point defendants were in contact with plaintiff as an individual. As to the third element of harm, defendant Skylux and Puzhakkaraillath were aware that plaintiff resided in California when they made the misrepresentations to him. Furthermore, plaintiff alleges that he paid Skylux approximately $207,000.00 of his own money, before his Indian company, Shannon Callnet, was created. Any harms that flowed from these misrepresentations necessarily flowed to plaintiff in California. Furthermore, because plaintiff was the primary financial backer of Shannon Callnet and the India call center project, the defendants should have foreseen that any intentional torts to him or his proposed company would be felt personally by plaintiff in California.

The other misrepresentations and intentional acts allegedly made by defendants occurred after plaintiff's India company was formed and STPL started to work directly with Shannon Callnet. (<u>See</u> FAC. ¶¶ 13-14, 20, 27.) According to the terms of the MOU, STPL would provide calling center services and equipment

1  to plaintiff's proposed company in India, not to plaintiff

2  personally.  (FAC Ex. A.)  Yet plaintiff, not Shannon Callnet,

3  was a party to the MOU, and STPL remained accountable to

4  plaintiff in California for the representations contained in the

5  MOU.  The totality of Skylux's contacts with plaintiff support a

6  finding of purposeful direction.  Skylux allegedly repeatedly

7  misrepresented to plaintiff its future obligations and

8  liabilities to plaintiff, and directed these misrepresentations

9  personally to plaintiff in California.  At this juncture, no more

10 is required to support a finding of purposeful direction.

11              2.   Claims Arise from Forum-Related Activities

12          The second prong to establish whether Skylux and

13 Puzhakkaraillath have sufficient minimum contacts so to establish

14 specific personal jurisdiction is that the plaintiff must show

15 that his claims arise out of or relate to the defendants'

16 forum-related activities.  Yahoo! Inc., 433 F.3d at 1205-06

17 (quoting Schwarzenegger, 374 F.3d at 802.  "This step explores

18 the relationship between the cause of plaintiff's harm and the

19 defendant's acts identified as creating purposeful contacts with

20 the forum state."  Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir.

21 1987).  Courts evaluate this relationship along a continuum.  On

22 one end, where a defendant has multiple and significant contacts

23 to support general jurisdiction, no relationship is needed

24 between the contacts and the cause of action.  On the other end,

25 where there is only one contact with the forum state, "the cause

26 of action must arise out of that particular purposeful contact of

27 the defendant with the forum state."  Id.

28          Plaintiff here alleges defendants had multiple contacts

1   with him in California, placing this court's analysis of the

2   relationship between defendant's contacts and plaintiff's claims

3   somewhere in the middle of the continuum described above.  See

4   Id.  Plaintiff alleges various tort and contract claims arising

5   out of his negotiations with Skylux and Puzhakkaraillath and his

6   MOU with STPL.  Plaintiff's third, sixth, seventh causes of

7   action claim against Skylux for alleged misrepresentations to

8   plaintiff in California, and are therefore clearly related to

9   Skylux's contacts with California.

10          Plaintiff's first, second, fourth, and fifth causes of

11  action involve STPL's subsequent breaches of the MOU allegedly

12  felt by plaintiff in California.  (See generally FAC.)  While

13  these claims do not arise out of particular purposeful contacts

14  with California, they do relate to and are a part of a common

15  series of events springing from Skylux's California contacts.

16  Skylux made representations to and negotiated a contract with

17  plaintiff, and plaintiff and STPL eventually formalized these

18  communications by entering into the MOU.  The court also notes

19  that MOU itself states that STPL has an office at Skylux in New

20  York, implying there is a connection between the two companies in

21  the provision of software licenses and call center services.

22  (FAC Ex. A.)  Plaintiff's claims, therefore, relate to Skylux's

23  forum contacts with plaintiff in California.

24          3.   Comport with Fair Play and Substantial Justice

25          Because plaintiff has satisfied the first two prongs of

26  the test for specific jurisdiction, the burden shifts to

27  defendant "to 'present a compelling case' that the exercise of

28  jurisdiction would not be reasonable."  Menken, 503 F.3d at 1060

14

(quoting <u>Schwarzenegger</u>, 374 F.3d at 802).  To determine the
reasonableness of exercising jurisdiction over a defendant, the
court considers the following factors:

> (1) the extent of the defendant's purposeful interjection
> into the forum state's affairs; (2) the burden on the
> defendant of defending in the forum; (3) the extent of
> conflict with the sovereignty of the defendant's state;
> (4) the forum state's interest in adjudicating the
> dispute; (5) the most efficient judicial resolution of
> the controversy; (6) the importance of the forum to the
> plaintiff's interest in convenient and effective relief;
> and (7) the existence of an alternative forum.

<u>Id.</u> (quoting <u>CE Distrib., LLC v. New Sensor Corp.</u>, 380 F.3d 1107,
1112 (9th Cir. 2004)).  Defendants contend that each factor
establishes that the exercise of personal jurisdiction over them
would be unreasonable.  (Mot. to Dismiss Skylux 13-16.)

      As to the first factor, some cases in the Ninth Circuit
"have suggested that once the minimum contacts threshold is met
the degree of intrusion into the forum becomes irrelevant."
<u>Core-Vent Corp. v. Nobel Indus. AB</u>, 11 F.3d 1482, 1488 (9th Cir.
1993) (citing <u>Corporate Inv. Bus. Brokers v. Melcher</u>, 824 F.2d
786, 787 (9th Cir. 1987)); <u>see</u> <u>Menken</u>, 503 F.3d at 1062 (Bybee,
J., concurring).  Nonetheless, other cases provide that "[e]ven
if there is sufficient 'interjection' into the state to satisfy
the [purposeful availment prong], the degree of interjection is a
factor to be weighed in assessing the overall reasonableness."
<u>Core-Vent Corp.</u>, 11 F.3d at 1488 (9th Cir. 1993) (quoting <u>Ins.</u>
<u>Co. of N. Am. v. Marina Salina Cruz</u>, 649 F.2d 1266, 1271 (9th
Cir. 1981)) (alterations in original).

      In this case, defendants' contacts with the state of
California appear limited to isolated communications in 2005 with

plaintiff to advertise Skylux's or STPL's calling center services and negotiate potential contract terms with plaintiff. Defendants also provide that they do not do any business in California. (Mot. to Dismiss Skylux 5.) Overall, defendant's contacts with the forum appear attenuated, and therefore this factor weighs against the reasonableness of exercising personal jurisdiction over defendant. Nonetheless, this factor does not "weigh heavily" in defendant's favor since defendant's contacts "were sufficient to meet the purposeful availment prong." Core-Vent Corp., 11 F.3d at 1488.

Regarding the second factor, the court acknowledges that defendants, a New York corporation and a New York resident, would be burdened by litigating this case in California. However, "with the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past." Menken, 503 F.3d at 1062 (quoting CE Distrib., LLC, 380 F.3d at 1112). Indeed, the Ninth Circuit provides that even where a defendant must travel from a foreign country, "this factor is not dispositive" as to the reasonableness of exercising personal jurisdiction. Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1115 (9th Cir. 2002) (citing Sinatra v. Nat'l Enquirer, 854 F.2d 1191, 1199 (9th Cir. 1988)); see, e.g., Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1132-33 (9th Cir. 2003); Core-Vent Corp., 11 F.3d at 1488. Therefore, although this factor weighs in defendant's favor, the court does not find it wholly persuasive.

The third factor concerns the extent to which the

16

district court's exercise of jurisdiction in California would
conflict with the sovereignty of New York, Skylux's state of
incorporation and Puzhakkaraillath's state of residence.
Defendants contend that the forum selection clause in the MOU
designating India as the mandatory forum for disputes presents a
conflict of sovereignty with India.  This factor, however,
involves only conflicts "with the sovereignty of the defendant's
state."  <u>Menken</u>, 503 F.3d at 1060.  <u>Core-Vent</u>, 11 F.3d at 1489.
To the extent that any actions of STPL might be imputed to
Skylux, courts evaluating this factor "have focused on the
presence or absence of connections to the United States in
general, not just to the forum state."  <u>Core Vent.</u>, 11 F.3d at
1489.  Defendants have not shown the presence of any sovereignty
conflict with the state of New York.  Therefore, the court finds
this factor to be neutral.

As to the fourth factor, defendants contend that
California does not have a strong interest in providing redress
for plaintiff's tort claims because the facts surrounding the
claims involved plaintiff's Indian company setting up a calling
center in India.  However, "California maintains a strong
interest in providing an effective means of redress for its
residents [who are] tortiously injured."  <u>Sinatra</u>, 854 F.2d at
1200.  While defendants contend that California lacks a strong
interest in providing a means of redress because plaintiff's
company is located in India, plaintiff has alleged individual as
well as corporate harms sufficient to invoke California's
interests.  Therefore, this factor weighs in favor of exercising
personal jurisdiction over defendants.

17

1    The fifth factor concerns the efficiency of the forum.
2    In evaluating this factor, courts look primarily at where the
3    witnesses and the evidence are likely to be located.  <u>Sinatra</u>,
4    854 F.2d at 1200.  "It is no longer weighed heavily given the
5    modern advances in communication and transportation."  <u>Caruth</u>, 59
6    F.3d at 129.  Defendants are both located in New York, and
7    plaintiff resides in California.  Defendants contend that
8    exhibits and witnesses are primarily located in India, as the
9    bulk of plaintiff's claims against them are based on the MOU
10   between plaintiff and STPL to set-up an Indian call center and
11   later disputes in India between Shannon Callnet and STPL.
12   Therefore, this factor weighs slightly in favor of defendants.

13   In evaluating the convenience and effectiveness of
14   relief for the plaintiff, courts have given little weight to the
15   plaintiff's inconvenience.  <u>Ziegler</u>, 64 F.3d at 476.  Nothing
16   indicates that relief is not available to plaintiff in India.
17   Because the burden on plaintiff would be relatively slight, this
18   factor is essentially neutral.

19   Regarding the final reasonableness factor, the court
20   agrees with defendants that alternative fora exist to adjudicate
21   this dispute, as plaintiff could bring this action in New York or
22   India.  Because the court will not, at this juncture, enforce the
23   MOU's forum selection clause choosing India as the preferred
24   forum for resolving disputes, this factor weighs only slightly
25   against exercising personal jurisdiction over defendants.

26   Ultimately, although several of the foregoing factors
27   favor defendant, the court concludes that defendant has not
28   presented a "compelling case" that the exercise of personal

1  jurisdiction over it would be unreasonable.  <u>See</u> <u>Panavision</u>
2  <u>Int'l, L.P. v. Toeppen</u>, 141 F.3d 1316, 1324 (9th Cir. 1998)
3  ("[W]e conclude that although some factors weigh in [defendant's]
4  favor, he failed to present a compelling case that the district
5  court's exercise of jurisdiction . . . would be unreasonable.").
6  Indeed, "[t]he only case in which the Supreme Court has held that
7  these factors determined the question of personal jurisdiction
8  was in a suit between two foreign corporations in which the Court
9  divided evenly over whether the minimum contacts were
10  sufficient."  <u>Menken</u>, 503 F.3d at 1063 n.1 (9th Cir. 2007)
11  (Bybee, J., concurring) (citing <u>Asahi Metal Indus. Co., Ltd. v.</u>
12  <u>Superior Court of Cal.</u>, 480 U.S. 102, 107 (1987)).

13  4.   <u>Personal Jurisdiction over Puzhakkaraillath</u>

14             Plaintiff also asserts that this court has personal
15  jurisdiction over Puzhakkaraillath as CEO of Skylux.  (FAC ¶ 15.)
16  However, the fiduciary shield doctrine provides that "a person's
17  mere association with a corporation that causes injury in the
18  forum state is not sufficient in itself to permit that forum to
19  assert jurisdiction over the person."  <u>Davis v. Metro Prods.,</u>
20  <u>Inc.</u>, 885 F.2d 515, 520 (9th Cir. 1989).  In other words, "[t]he
21  mere fact that a corporation is subject to local jurisdiction
22  does not necessarily mean its nonresident officers, directors,
23  agents, and employees are suable locally as well."  <u>Colt Studio,</u>
24  <u>Inc. v. Badpuppy Enter.</u>, 75 F. Supp. 2d 1104, 1111 (C.D. Cal.
25  1999).  Though employees are not necessarily subject to liability
26  in a given jurisdiction due to the contacts of their employers,
27  "their status as employees does not somehow insulate them from
28  jurisdiction.  Each defendant's contacts with the forum State

19

must be assessed individually." <u>Calder v. Jones</u>,  465 U.S. 783,
790 (1984) (finding jurisdiction proper over non-resident
corporate employees where the employees were the primary
participants in an alleged wrongdoing intentionally directed at a
California resident).

        The fiduciary shield doctrine may be ignored in two
circumstances: (1) where the corporation is the agent or alter
ego of the individual defendant; or (2) by virtue of the
individual's control of, and direct participation in the alleged
activities.  <u>Transgo, Inc. v. Ajac Transmission Parts Corp.</u>, 768
F.2d 1001 (9th Cir. 1985); <u>Wolf Designs, Inc. v. DHR Co.</u>, 322 F.
Supp. 2d 1065, 1072 (C.D. Cal. 2004).

        Plaintiff's allegations against Puzhakkaraillath do not
adequately describe the kind of conduct needed to allege an alter
ego.  However, plaintiff also argues that Puzhakkaraillath
participated directly in the actions which give rise to this
suit.  "'A corporate officer or director is, in general,
personally liable for all torts which he authorizes or directs or
in which he participates, notwithstanding that he acted as an
agent of the corporation and not on his own behalf.'"  <u>Wolf
Designs</u>, 322 F. Supp. 2d at 1072 (quoting <u>Coastal Abstract Serv.,
Inc. v. First Am. Title Ins. Co.</u>, 173 F.3d 725, 734 (9th Cir.
1999) (corporate officers cannot "hide behind the corporation
where [the officer was] an actual participant in the tort")).
Generally, "[c]ases which have found personal liability on the
part of corporate officers have typically involved instances
where the defendant was the 'guiding spirit' behind the wrongful
conduct, . . . or the 'central figure' in the challenged

1    corporate activity." Davis v. Metro Prods., Inc., 885 F.2d 515,

2    524 (9th Cir. 1989) (citations omitted).

3            Puzhakkaraillath is the President and CEO of both

4    Skylux and STPL, and owns a majority of the shares in both

5    companies. (Mot. to Dismiss Puzhakkaraillath Decl. ¶¶ 7, 12, 17.)

6    In his declaration, Puzhakkaraillath admits to speaking with

7    plaintiff on the telephone about plaintiff's plan to set up a

8    call center in India and STPL's interest in acting as a

9    consultant. (Id. ¶ 19.) Plaintiff's FAC alleges that "SKYLUX

10   and PUZHAKKARAILLATH made material misrepresentations to

11   Plaintiff, specifically that [listing three Skylux

12   misrepresentations]" (FAC ¶ 27), and that "Puzhakkaraillath had

13   knowledge of the conduct of Skylux and its agents and encouraged,

14   aided, and or agreed to the conduct of defrauding Plaintiff of

15   substantial sums of money." (FAC ¶ 50.)[2] Defendants do not

16   dispute the allegation that Puzhakkaraillath personally contacted

17   plaintiff to advertise his company's calling center services.

18   Rather, they allege that "most of the discussions were between

19   Plaintiff's employees" in India and STPL's employees (Mot. to

20   Dismiss 12:6-8) (emphasis added) and assert that there were no

21   in-person meetings between Puzhakkaraillath and anyone at

22   plaintiff's company. (Id. 12:4-5.) Regardless of whether the

23   statements were in-person, or by phone, plaintiff's allegations

24   against Puzhakkaraillath are sufficient at this stage to find

25

26          [2]Plaintiff also alleges that Puzhakkaraillath, on behalf of
     Skylux, entered into the MOU with Plaintiff. (FAC ¶ 9.)
27   However, this is clearly controverted by the MOU itself (FAC Ex.
     A), and plaintiff appears to correct this allegation in his
28   Opposition. (Opp. Mot. to Dismiss 3-4.)

that Puzhakkaraillath personally and purposefully directed
tortious conduct toward plaintiff in California and that this
court has personal jurisdiction over him.

> B. _Motion to Dismiss for Improper Venue_

Federal law applies to interpret a forum selection
clause, because forum selection is primarily a venue matter.
_See, e.g._, _Manetti-Farrow, Inc. v. Gucci America, Inc._, 858 F.2d
509, 512 (9th Cir. 1988).  In resolving motions to dismiss for
improper venue based on a forum selection clause, the pleadings
are not accepted as true, as would be required under a Rule
12(b)(6) analysis.  _See, e.g._, _Murphy v. Schneider Nat'l Inc._,
362 F.3d 1133, 1137 (9th Cir. 2004).  The court must, however,
draw all reasonable inferences in favor of the non-moving party
and resolve all factual conflicts in favor of the non-moving
party.  _Id._ at 1138.  "[I]f the facts asserted by the non-moving
party are sufficient to preclude enforcement of the forum
selection clause, the non-moving party is entitled to remain in
the forum it chose for suit unless and until the district court
has resolved any material factual issues that are in genuine
dispute."  _Id._ at 1139.

> 1. _Standing_

The court must first decide whether Skylux and
Puzhakkaraillath have standing to enforce the forum selection
clause.  It is undisputed that neither Skylux nor
Puzhakkaraillath signed the MOU containing the clause.  (_See_ FAC
Ex. A.)  Nevertheless, both defendants seek to enforce the forum
selection clause against plaintiff and force plaintiff to bring
his claims against them in the courts of India.  The Ninth

Circuit allows non-parties to enforce a forum selection clause
where "the alleged conduct of the nonparties is closely related
to the contractual relationship."  Holland America Line Inc. v.
Wartsila North America, Inc., 485 F.3d 450, 456 (9th Cir. 2007);
see also Manetti-Farrow Inc., 858 F.2d at 514 n.5 ("[A] range of
transaction participants, parties and non-parties, should benefit
from and be subject to forum selection clauses.").  In Holland
America, a forum selection clause was found to apply to nonparty
defendants because "any transactions between those entities and
Holland America took place as part of the larger contractual
relationship between Holland America and [another party to the
forum selection clause]."  485 F.3d at 456.

Plaintiff here alleges a close relationship among
Skylux, STPL, and Puzhakkaraillath, and seeks to impute STPL's
alleged torts and contract violations to Skylux.  (FAC ¶ 17; Opp.
Mot. to Dismiss Skylux 3-4.)  Furthermore, like in Holland
America and Manetti-Farrow, Inc., the alleged misrepresentations
of Skylux and Puzhakkaraillath are intimately tied to the
eventual contract that plaintiff signed with STPL.  Therefore,
defendants Skylux and Puzhakkaraillath may invoke the forum
selection clause of the MOU.

2.   Enforcement of the Forum Selection Clause

A contractual forum selection clause is "prima facie
valid and should be enforced unless enforcement is shown by the
resisting party to be 'unreasonable' under the circumstances."
The Bremen v. Zapata Offshore Co., 407 U.S. 1, 10 (1972).  While
The Bremen involved admiralty law, its standard has been widely
applied to forum selection clauses in other contexts, and governs

23

international contracts specifying forum and applicable law.   See Richards v. Lloyd's of London, 135 F.3d 1289 (9th Cir. 1998); Manetti-Farrow, Inc., 858 F.2d at 512.   For a forum selection clause to be deemed "unreasonable" so as to require setting aside the clause, the opposing party must show that its enforcement would contravene strong public policy of the forum in which the suit was brought, or be the result of fraud, undue influence, overweening bargaining power, or be so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court.   See The Bremen, 407 U.S. at 18.

A showing of fraud requires proof that the plaintiff relied on the misrepresentations or fraudulent omissions of a defendant.   See In re Estate of Young, 160 Cal. App. 4th 62, 79 (2008) (finding the essential elements of a claim for fraud are "(a) a misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage"); Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC, 162 Cal. App. 4th 858, 868 (2008) (stating that "the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact" in an action for fraud based on concealment).

The MOU contains a forum selection clause which states: "All disputes of any nature will be settled under the jurisdiction of Ludhiana (Punjab) court only."   (FAC Ex. A ¶ 11.) Plaintiff contends that the forum selection clause should not be

enforced because is the result of fraud.  According to plaintiff, he was unable to review the MOU before it was signed by his father-in-law in India, despite his repeated requests for a copy of the MOU.  (Opp. Mot. to Dismiss Skylux 5.)  In his supplemental declaration, the plaintiff further asserts that he orally negotiated over the terms of the MOU with defendants, and that the defendants never mentioned their intention to insert a forum selection clause binding plaintiff to litigating any disputes in India.  (Supp. Decl. Randhawa Sur-Reply Mot. to Dismiss Skylux ¶ 3.)  Had he known the defendants intended to insert the forum selection clause, the plaintiff asserts he would not have accepted the agreement.  (Id.)  Plaintiff alleges that when he did see a copy of the signed MOU approximately three to four days after it was executed, he immediately contacted defendants to object to the forum selection clause present in paragraph eleven of the MOU.  (Id. ¶ 4.)  Plaintiff alleges that Skylux assured him the clause was deleted, and that a new MOU would be executed.  (Id.)

        The defendants describe a different series of events, and allege that they did provide the plaintiff with a copy of the MOU that included the forum selection clause before the MOU was signed by plaintiff's father-in-law.  (Supp. Decl. Puzhakkaraillath Response to Surreply ¶ 5.)  Defendants further allege that the plaintiff first objected to the forum selection clause in 2009 in response to the defendants' motion to dismiss. (Id. ¶¶ 6, 8.)  Finally, defendants allege that neither they nor any agents of Skylux or STPL told the plaintiff that the forum selection clause would be deleted.  (Id. ¶ 7.)

25

1        As alleged, the plaintiff has stated facts sufficient

2   to preclude enforcement of the forum selection clause under the

3   fraud exception to <u>The Bremen</u>.  In short, plaintiff alleges that

4   he had negotiated an agreement with the defendants, that

5   defendants inserted the forum selection clause into the MOU

6   without his knowledge or consent, and that had he been aware that

7   defendants intended to insert the clause he would not have agreed

8   to the MOU.  Plaintiff alleges at the very least that the

9   defendants failed to disclose the inclusion of a material term to

10  the MOU and misled plaintiff into believing the clause was

11  subsequently deleted.  Accepting plaintiff's assertions of fact

12  as true and giving him all reasonable inferences, plaintiff

13  further alleges a broader scheme by defendants to make plaintiff

14  believe he was dealing with Skylux, an American company, and to

15  surreptitiously bind him to litigating any disputes that arose

16  out of the MOU in India.

17        This Rule 12(b)(3) motion comes very early in the

18  litigation when the factual record remains undeveloped.  While

19  the defendants request an evidentiary hearing to resolve the many

20  factual issues that remain in genuine dispute surrounding the

21  inclusion of the forum selection clause, the parties will

22  undoubtedly need discovery before such a hearing could be

23  conducted.  Should the factual record regarding the inclusion of

24  the forum selection clause be further developed during the

25  ordinary discovery process, defendants may renew their motion to

26  dismiss for lack of improper venue.

27        C.   <u>Motion To Dismiss for Failure To State a Claim upon</u>

28           <u>Which Relief Can Be Granted</u>

26

1        As a preliminary matter, defendants have withdrawn

2   their motion to dismiss with respect to plaintiff's sixth and

3   seventh causes of action.  (Skylux Reply 8.)

4        Plaintiff's Opposition makes no arguments with respect

5   to the defendants' motion to dismiss plaintiff's first, second,

6   fourth and fifth causes of action.  Those causes of action--

7   breach of contract, breach of duty of good faith and fair

8   dealing, breach of express warranty, and breach of the implied

9   warranty for fitness for a particular purpose--are all based on

10  the MOU that plaintiff concedes is with STPL and not Skylux or

11  Puzhakkaraillath personally.  (Opp. Skylux Mot. to Dismiss 3.)

12  Plaintiff has not shown if or why these parties should be exposed

13  to liability under the MOU for STPL's alleged breaches of the

14  contract itself and of express and implied warranties present in

15  the MOU.  Plaintiff admits that he was aware that Skylux and STPL

16  were in fact legally distinct, and believed Skylux to be the

17  parent company to STPL.  (Supp. Decl. Randhawa Sur-Reply Mot. to

18  Dismiss Skylux ¶ 2.)  Taking plaintiff's assertions as true,

19  plaintiff presents no reason why the alleged parent company

20  Skylux should be sued instead of STPL, or why Puzhakkaraillath

21  should be liable on the contract claims as if he were a signatory

22  and party to the MOU.  Accordingly, the court must dismiss

23  plaintiff's first, second, fourth, and fifth causes of action.

24       Plaintiff's third cause of action for misrepresentation

25  is subject to the heightened pleading standards of Federal Rule

26  of Civil Procedure 9(b).  Under Rule 9(b), "a party must state

27  with particularity the circumstances constituting the fraud."

28  Fed. R. Civ. P. 9(b).  The plaintiffs must include the "who,

what, when, where, and how" of the fraud.  <u>Vess v. Ciba-Geigy</u>

<u>Corp. USA</u>, 317 F.3d 1097, 1006 (9th Cir. 2003) (citation

omitted).  "The plaintiff must set forth what is false or

misleading about a statement, and why it is false." <u>Decker v.</u>

<u>Glenfed, Inc.</u>, 42 F.3d 1541, 1548 (9th Cir. 1994).  Additionally,

"[w]here multiple defendants are asked to respond to allegations

of fraud, the complaint must inform each defendant of his alleged

participation in the fraud." <u>Ricon v. Reconstrust Co.</u>, No.

09cv937, 2009 WL 2407396, at *3 (S.D. Cal. Aug. 4, 2009) (quoting

<u>DiVittorio v. Equidyne Extractive Indus.</u>, 822 F.2d 1242, 1247 (2d

Cir. 1987)).  The plaintiff must plead each element of fraud,

which are: (1) misrepresentation; (2) scienter; (3) intent to

induce reliance; (4) justifiable reliance; and (5) resulting

damages.  <u>In re Estate of Young</u>, 160 Cal. App. 4th 62, 79 (2008).

Plaintiff's third cause of action fails to meet the

heightened pleading standard articulated in Rule 9(b).  Plaintiff

alleges that Skylux and Puzhakkaraillath made material

misrepresentations to plaintiff that: (1) Skylux would be

responsible for implementing the Interactive software and calling

system; (2) that Skylux had no record that plaintiff had

purchased Interactive licenses from it; and (3) that Skylux could

not help plaintiff solve the problems with the Interactive

software until a record of plaintiff's purchase could be found.

(FAC ¶ 27.)  Plaintiff does not distinguish between Skylux and

Puzhakkaraillath as to these representations, or identify any

other Skylux agents that made representations to plaintiff.

Rather, plaintiff merely alleges that "SKYLUX demanded proof of

purchase from Plaintiff . . . and subsequently SKYLUX refused to

provide the correct licenses to Plaintiff." (FAC ¶ 14.)

Contrary to plaintiff's assertion, paragraphs 8 to 15 of the FAC do not meet the requirements of Rule 9(b). (Opp. Mot. to Dismiss Skylux 6.) Plaintiff must put each defendant on notice as to their alleged participation in the fraudulent misrepresentations, and specify with particularity who made the statements at issue and when they were made. Furthermore, plaintiff must show why the statements are false. Specifically, plaintiff has not shown what is misleading about alleged misrepresentations (2) and (3) above, or why they those alleged statements are false or misleading.

Finally, plaintiff's third cause of action repeatedly recites the elements of fraud rather than alleging specific facts to support the legal conclusions that plaintiff asserts. "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1940 (citing Twombly, 550 U.S. at 555).

IT IS THEREFORE ORDERED that defendants Skylux and Puzhakkaraillath's motion to dismiss plaintiff's first, second, third, fourth, and fifth causes of action under Rule 12(b)(6) of the Federal Rules of Civil Procedure be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendants Skylux and Puzhakkaraillath's motions to dismiss be and the same hereby are, DENIED in all other respects.

//

//

29

1          Plaintiff has thirty days from the date of this Order

2  to file an amended complaint consistent with this Order.

3  DATED:   December 18, 2009

4

5                                                            _____

WILLIAM B. SHUBB

6                                          UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28